# Megraw *v.* Hamilton Trust Company, Appellant.

*Contracts—Construction—Suretyship—Alternative obligation.*

Where the defendant, the equitable owner of certain real estate, entered into a written agreement with a subcontractor engaged in work on buildings being constructed on such land, that it would "see that this property is made available to you, by payment of your bill out of these proceeds on sale, by conveyance to you, or else by a mortgage in the amount of your bill against" the contractor, naming him, "if the latter should fail to pay your bill," and further agreed that the property should not be encumbered beyond the mortgages already a lien thereon, the obligation of the defendant was not that of a surety, but it was bound to perform one or the other of the alternatives mentioned in the contract, and in an action thereon after the failure of the contractor and the refusal of the defendant on demand to perform its agreement, the fact that the contractor disputed plaintiff's claim and had so notified the defendant was no defense and a verdict for the plaintiff was sustained.

Argued Jan. 3, 1916. Appeal, No. 148, Jan. T., 1915, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1908, No. 5100, on verdict for plaintiffs in case of Mary H. Megraw and Joseph R. Livezey, Executors under the will of John Megraw, Deceased, and James C. Megraw, trading as The Standard Tile Company v. Hamilton Trust Company. Before Brown, C. J., Mestrezat, Potter, Stewart, Frazer and Walling, JJ, Affirmed.

Assumpsit on a written contract. Before Audenried, P. J.

The facts are stated in the opinion of the Supreme Court, and in Megraw v. Hamilton Trust Company, 241 Pa. 444.

Verdict and judgment for plaintiff for $2,597.33. Defendant appealed.

*Errors assigned* were answers to points and the refusal of judgment for defendant n. o. v.

*M. Hampton Todd,* for appellant.

*E. Spencer Miller,* for appellee.

OPINION BY MR. JUSTICE STEWART, March 6, 1916:

This is the second time this case has been before us. The earlier appeal is to be found in 241 Pa. 444. The origin and history of the contention between the parties are there so fully stated that it will be necessary here to recite only such facts as bear directly upon the point now in issue. The appellant, the Hamilton Trust Company, being largely interested in the completion of a building contract entered into by C. F. McFadden, and which contemplated the improvement of a vacant lot of ground in the City of Philadelphia by the erection of twelve dwellings thereon, executed and delivered to the Standard Tile Company, as an inducement to said company to engage with McFadden to supply all the material and labor necessary to do the tile work in the twelve houses, at the price bid by the company, the following declaration in writing:

"Philadelphia, March 2, 1907.

"Standard Tile Company,

"Land Title Building, Phila., Pa.

"Gentlemen: W. Sherwood Crowl, of the City of Philadelphia holds title to premises 4520 Walnut street, Philadelphia, and C. F. McFadden has arranged with him that this property shall be security for indebtedness to be incurred by C. F. McFadden, because of the work and materials estimated for by you and accepted by Mr. McFadden. This company will see that this property is made available to you, by payment of your bill out of these proceeds on sale, by conveyance to you, or else by a mortgage in the amount of your bill against Mr. McFadden, if the latter should fail to pay your bill. The

property shall not be encumbered beyond the mortgage mentioned by Mr. Crowl in his acknowledgment under date of February 27, 1907, in impairment of the rights you are hereby given against it.

(Signed) "Hamilton Trust Company."

On the faith of this security the tile company contracted with McFadden. The premises 4520 Walnut street was one of the subdivisions of the lot that was being improved. Like each of the other eleven it was subject to a mortgage of $8,000.00, held by the appellant company, and in common with all the other eleven was subjected to a general mortgage of $15,000.00, also held by the appellant company. On the faith of this security from the appellant company the tile company entered upon the work. McFadden, after he had completed the construction of six of the houses, failed. The tile company had fulfilled its contract as to these six houses, and had furnished considerable material to be used in the uncompleted buildings. There was then due it from McFadden the sum of $2,792.67. The lot 4520 Walnut street that was to be made available to the tile company as security for its claim remained at this time unimproved, or at most improved but slightly. Later, but not by McFadden, it too was built upon. McFadden having defaulted in payment of the tile company's claim, the latter in August, 1908, made demand in writing on the trust company that it comply with one or other of the alternative stipulations contained in the declaration above recited, inasmuch as McFadden had failed to pay. To this demand the trust company replied that it had been advised by McFadden that the claim of the tile company was contested, and not to transfer or mortgage the property therefor. Following this refusal of the trust company the tile company brought the present action to recover damages. Meanwhile the trust company had foreclosed on its second mortgage and sold the premises at sheriff sale for the sum of $100.00, subject to the $8,000.00 mortgage. These

facts appearing in evidence on the trial, and they were uncontested, the court in its charge held that the questions of fact for the jury were, first, what was due from McFadden to the plaintiff on September 1, 1908, on the contract for tiling, and second, what was the market value of the premises 4520 Walnut street first September, 1908, in the condition in which it then stood. The learned court further instructed that plaintiff would be entitled to recover only in case the market value as found by the jury exceeded the amount of mortgage indebtedness due the defendant on that day, admitted to be $10,622.00, and for such excess only so far as would be required to meet the plaintiff's just demand. The jury returned that they found the plaintiff was entitled first September, 1908, to receive from McFadden $2,792.67; but the market value of the property on that date was $12,500.00, and they found for the plaintiff the difference between $10,622.00 and $12,500.00, plus interest, namely, $2,597.33. No complaint is made that the measure of damage applied was incorrect, but it is contended that the obligation of the defendant under the declaration above recited was that of surety, and that because the principal had notified the surety that the claim made against him by the plaintiff was contested, the surety had the right to decline performance of this contract until the debt due from the principal had been legally determined. A sufficient answer to this is that the obligation cannot be construed as a contract of suretyship. It does not by its terms make the trust company answerable to the plaintiff for the debt of McFadden. A suit against the trust company for McFadden's debt could not have been maintained. What the trust company agreed to do was to make available to the plaintiff, to answer McFadden's debt, a certain property over which, while not the holder of the legal title, it had absolute control quite as much as though it had been the holder of such title, in one or other of three ways, by payment of the proceeds on sale of the property, by conveyance, or by

mortgage in the amount that McFadden owed. When the plaintiff made demand of the trust company that it keep its promise by doing one or other of these things, the plaintiff's contract with McFadden was at an end. The indebtedness had been contracted, and McFadden had failed. The plaintiff therefore was in position to make the demand. The amount due the plaintiff not having been judicially determined; it remained open to dispute, and the trust company would have been fully justified in refusing compliance with the demand until the amount had been agreed upon or judicially determined; but it had no right so long as the amount remained undetermined to so dispose of the property pledged as to put it beyond its power to carry out the terms of its agreement with the plaintiff. And yet this is what it did, and thereby made itself liable to the plaintiff. Did the case rest on this, a different measure of damages would have applied than that adopted; since the period of default would have been different. The case assumes a different aspect when it is considered that defendant offered no evidence whatever that any dispute as to the amount due the plaintiff on its contract with McFadden existed or was threatened. The statement contained in the letter of the trust company written in reply to the demand made by the plaintiff for performance of the contract that McFadden had advised the company that the claim was contested and notified it not to transfer or mortgage the property, was not evidence of such fact. It was but a self serving declaration. It was incumbent on the defendant to make good by evidence the defense it relied on as excusing its failure to meet the demand when made, namely, that the amount of plaintiff's claim was in dispute, and this it did not do. McFadden was a witness in the case, yet no attempt was made to show by him that he had at any time questioned the plaintiff's bill or had notified the defendant company not to sell, mortgage or convey the property to the plaintiff. Indeed, on the trial of the case the correctness of plaintiff's bill was not

430 MEGRAW v. HAMILTON TRUST CO., Appellant.

contested. On this state of the evidence it was entirely correct to charge the defendant with a default or breach of its contract as of the date of its refusal to comply with the plaintiff's demand. The case was for the jury. In what we have said the several assignments of error have been fully answered and they are overruled. The judgment is affirmed.