[No. 26811. Department Two. December 28, 1937.]

HENRY FLEISHBEIN, *Respondent,* v. GEORGE T. THORNE, *as Executor, Appellant.*[1]

[1]Reported in 74 P. (2d) 880.

66

*Longfellow & Fitzpatrick,* for appellant.

*Flood, Lenihan & Ivers* and *John D. MacGillivray,* for respondent.

MILLARD, J.—On September 25, 1916, Bertha Kendall (Bertha Kendall Thorne, now deceased), sister of the plaintiff, purchased, subject to a first mortgage which matured January 18, 1916, and was in default at the time of this purchase, four city lots in King county. On July 28, 1917, plaintiff purchased the mortgage, and same was assigned to him by the mortgagee. The mortgage and the assignment of same were duly placed of record in the office of the auditor for King county.

In June, 1934, Bertha Kendall Thorne applied to the Home Owners Loan Corporation for a mortgage loan. She could not obtain the loan while the plaintiff's first mortgage remained of record as a prior lien upon the premises. Mrs. Thorne requested her brother to release his mortgage to enable her to obtain the loan and execute a first mortgage in favor of the Home Owners Loan Corporation. She agreed to give to her brother, the plaintiff, a second mortgage on the property as soon as she obtained the loan and executed the first mortgage to the Home Owners Loan Corporation. On June 21,

1934, at which time the mortgage and the mortgage note were barred by the statute of limitations, inasmuch as no payment of principal or interest was made on the mortgage debt subsequent to July 20, 1917, the plaintiff released the mortgage of record, with the express agreement that his mortgage be renewed as a second mortgage immediately after the Home Owners Loan Corporation's first mortgage was placed of record. Following the release of the mortgage by plaintiff, his sister executed a first mortgage in favor of the Home Owners Loan Corporation as security for payment of a loan of approximately seven hundred dollars, which she used in the payment of delinquent taxes on the mortgaged property. That mortgage was placed of record and became a first mortgage on the property in question.

On December 6, 1935, Bertha Kendall Thorne died. At the time of her death, she had not executed and delivered to her brother a second mortgage in lieu of the one he had released in order to enable her to borrow money from the Home Owners Loan Corporation.

In July, 1936, plaintiff filed a claim against the estate of his deceased sister in the amount of $2,381.17, being the principal of the mortgage in the amount of $916.73, and accumulated interest on the mortgage debt from July 28, 1917. The executor of the estate rejected the claim, whereupon plaintiff instituted this action to establish a second mortgage on the property to secure the payment of the indebtedness of the deceased and her estate to him. The defendant denied that the plaintiff's mortgage was released pursuant to the agreement alleged, and affirmatively pleaded in bar of the action the six-year statute of limitations and the statute of frauds.

The cause was tried to the court, which expressed the view that the release of the cloud of the mortgage, which was unenforcible, by the plaintiff, afforded a sufficient consideration for the implied promise to perform

the condition attached to the offer in plaintiff's letter to his sister. Judgment was entered in favor of the plaintiff. The defendant appealed.

Counsel for appellant insist, as they contended in the trial court, that this is an action upon a contract in writing, and as same was not commenced within six years after the cause of action accrued, it is barred by the statute of limitations. Rem. Rev. Stat., §§ 155, 157 [P. C. §§ 8160, 8162]. It is argued that, to suspend the statute of limitations by promise or acknowledgment, the new promise or acknowledgment must be in writing and signed by the party to be charged.

"No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of any payment of principal or interest." Rem. Rev. Stat., § 176 [P. C. § 8183].

It is further contended that, when the respondent gave the satisfaction of the mortgage lien, enforcement of which was then barred by the statute of limitations, and stated in his letter that his sister should give to him a renewal of the old mortgage as a second mortgage after placing the Home Owners Loan mortgage on record as a first mortgage, the contract contained terms that were not to be performed within a year, hence the agreement is void, as it contravenes the statute (Rem. Rev. Stat., § 5825 [P. C. § 7745]) which requires every agreement that, by its terms, is not to be performed in one year from the making thereof, to be in writing and signed by the party to be charged therewith, or by his legally constituted agent.

Counsel for respondent argue that this is not an action to enforce payment of the original note and to foreclose the mortgage executed January 18, 1913, action upon which is, of course, barred by the six-year stat-

ute of limitations, but that this action is on the agreement made by the deceased in June, 1934, with respondent.

Chris Fleishbein, brother of the respondent and the decedent, testified that, after the Home Owners loan was made to his sister, she told him that she expected to return the second mortgage for the principal and interest to her brother, the respondent.

The declarations of the deceased to Chris Fleishbein respecting her agreement with her other brother, the respondent, in the matter of giving to him a second mortgage (in consideration of the removal of the cloud of respondent's first mortgage, which could not be enforced because barred by the statute of limitation), to permit her to obtain a loan from the Home Owners Loan Corporation, was admissible in evidence (as one of the exceptions to the general rule excluding hearsay) as a declaration against interest. Her declarations were opposed to her pecuniary or proprietary interest.

Chris Fleishbein's interest in the result of this action was not such as to disqualify him as a witness to testify concerning the declarations against interest made by his sister, now deceased.

Other evidence upon which respondent may rely to establish the contract he made with his sister is a carbon copy of a letter written June 21, 1934, from DePere, Wisconsin, by respondent to his sister. The execution by the respondent of the release of his mortgage, the recordation of that release, the loan by the Home Owners Loan Corporation to the respondent's sister, and her execution and filing for record of a mortgage to secure payment to the Home Owners Loan Corporation of that loan, tend to prove the agreement was as alleged by the respondent.

The letter, of which a carbon copy was admitted in

evidence, written by respondent to his sister, June 21, 1934, reads as follows:

"De Pere, Wisconsin,
June 21st, 1934.

"Dear Sister & Brothers:

"Your letter came several days ago and very glad to hear from you, I also received the Satisfaction of Mtg, which I am enclosing herewith, hope you will now receive the Loan frm the H. O. L. C. which will help to pay your taxes and see you through for some little time to come.

"Now I dont want you to worry about paying me on this Mtg, and as I told you when last your way, that I want Sam to have whatever interest I have in this, he having done all the work on the basement painting and fixing up etc, and paid for all the material beseides, it will always make a home for him, and as I said when you get the Loan and have the time then just have my mortgage renewed and placed on record for this will mean that it is a second Mtg, and I will wait until the first is paid up and with the samll payments you are to make to the Home Loan Co. will not in the least bother you, as I understand this is to run for five years or longer and in the mean time conditions may clear up so all will come out O. K.

"I only hope that George and the boys will get back to work at something just so they will not get too far behind.

"I am also going to satisfy Chris's Mtg the same as yours and after he has his loan fixed up by the H. O. L. C. which is the same concern, he will also file the Mtg for me as a second mtg, hope he going to get a hearing on his soon so he can rest a little easier, it sure is taking them a long while to get action on these loans.

"I have been very busy here getting matters ironed out on the Wilcox estate matters and will be quite busy for some time, but if we can at all arrange it will drive your way, that is if I am not kept to long after September, after that will be obliged to take the southern route.

"Let me know if Chris has secured his loan, We are both well and hope the same of you all, Love and best to you and all the Fmly.                    Henry."

A party who attempts to establish a contract by correspondence cannot put in evidence his letter to the adverse party purporting on its face to answer one from him, without producing the previous communication; or, if lost or beyond his control, without showing that fact and proving its contents. A letter sought to be introduced by the writer is properly excluded where it contains self-serving declarations of the writer and where there is no evidence of its having been mailed and received.

There is competent evidence—the testimony of Chris Fleishbein that his sister wrote to her brother and accepted the offer contained in his reply to her letter, together with the satisfaction of respondent's mortgage, the loan by the Home Owners Loan Corporation and the execution of a first mortgage as security for payment of that loan to the Home Owners Loan Corporation, and unsuccessful demand on appellant for production of the original letter from respondent—which satisfies the requirements of the rule governing the introduction in evidence of such a letter. See *Eltzroth v. Murphy,* 75 Colo. 5, 223 Pac. 760; 12 C. J. 906; *Forrest v. Hull,* 267 S. W. (Tex. Civ. App.) 308; *McMahon v. Gunter,* 219 S. W. (Tex. Civ. App.) 284; *Booth & Co. v. Steffey,* 150 Ill. App. 584; *Huckestein v. Kelly & Jones Co.,* 139 Pa. 201, 21 Atl. 78; *Hershey v. Love,* 278 Pa. 161, 122 Atl. 225; *Callahan v. Goldman,* 216 Mass. 234, 103 N. E. 687; *Kann v. Bennett,* 223 Pa. 36, 72 Atl. 342; Jones Commentary on Evidence (2d ed.), § 1756.

Respondent's action is not based upon the original note and mortgage of 1913. The decedent was not, nor was her estate, ever liable on the original note. Respondent does not seek foreclosure of a mortgage after the full statutory period has run against the mortgage debt. When a debt secured by a mortgage—a mortgage is only a lien upon the property to secure pay-

ment of a mortgage debt—is barred by the statute of limitations, the mortgage is also barred. In June, 1934, the original mortgage, which constituted a cloud upon the title of the decedent and which it was necessary to remove to obtain a loan from the Home Owners Loan Corporation, was released and satisfied by the respondent. The original mortgage no longer exists.

In consideration for the removal of that cloud upon the decedent's title, the decedent agreed to execute in favor of the respondent a second mortgage on the premises involved. If there had been a written acknowledgment of the obligation, and if in that writing there had been incorporated a promise to pay the debt, the moral obligation of the decedent to pay the original mortgage —then outlawed—would constitute a sufficient consideration for a promise to pay the debt.

Respondent's action is simply a bill in equity to enforce an agreement for a lien upon real estate. He seeks the specific performance of a contract he made with his sister in June, 1934. His equity is based upon the failure or refusal of his sister to perform an agreement upon a sufficient consideration to give a mortgage upon real estate. The six-year statute of limitations has no bearing on this action, nor may the appellant successfully invoke the statute of frauds as a bar to respondent's cause of action.

An agreement to give a mortgage on certain property not objectionable for want of consideration, is treated in equity as a mortgage, upon the principle that equity will treat that as done which by agreement is to be done. Jones on Mortgages (8th ed.), § 226.

"An agreement or contract to secure an obligation by a mortgage creates in equity a lien on the property agreed to be mortgaged, and operates as an equitable mortgage according to the maxim that equity regards that as done which ought to be done." 19 R. C. L. 275.

█ It is not necessary that the agreement should in all cases be in writing. A parol agreement which has been fully performed, as in the case at bar, creates an equitable mortgage. A situation the same in principle would be presented where a person furnished money to purchase property on an oral promise of a mortgage on that property. Jones on Mortgages (8th ed.), § 227. With the exception of the execution by the respondent's sister of the second mortgage, there was a complete and full performance of the contract of 1934 of the respondent with his sister; hence, the contract has the effect of an equitable mortgage and is not within the operation of the statute of frauds.

"While such an agreement, in view of the statute of frauds, cannot generally be enforced when resting merely in parol, yet, even when not reduced to writing, complete execution on the part of complainant is sufficient to take it out of the statute so as to create an equitable mortgage, . . ." 41 C. J. 302.

█ Appellant's motion for a new trial on the ground of newly discovered evidence was properly overruled. The new evidence offered was a letter dated September 5, 1934, from respondent to his sister, which letter was at all times in the possession of the sister or of the appellant. To justify the granting of a motion for a new trial on the ground of newly discovered evidence, it must appear, among other things, that the evidence is such as will probably change the result if a new trial is granted, that it could not have been discovered before the trial by the exercise of due diligence, and that it is not merely cumulative or impeaching. We are not satisfied that, if the letter had been produced at the trial, it would have or should have changed the result.

Doubtless, the trial court, which has a large discretion in the matter of granting a new trial on the ground of newly discovered evidence, was convinced, as are we,

74

that the letter could have been discovered before the trial by the exercise of due diligence. The new evidence also comes within the ban of a third condition that it must appear that it is not merely cumulative or impeaching.

The judgment is affirmed.

STEINERT, C. J., BEALS, ROBINSON, and BLAKE, JJ., concur.